Syllabus.

---

66   209|
84   102|

## SIGFRIED GRUNER V. ERLAND WESTIN.

(Case No. 5446.)

1. ARTICLE 7005 PASCHAL'S DIGEST CONSTRUED—Art. 7005, P. D., means that if there be no legal obstacle to restrain the issuance of an execution at any time during the year following the time at which, under the general provisions of the law, an execution may first issue, the failure to issue it within one year shall render the lien acquired through the judgment inoperative.

2. ARTICLE 1493, PASCHAL'S DIGEST—A compliance with art. 1493, P. D., had the effect originally of suspending the right of the adverse party to seize and sell property, and thereby have satisfaction of his judgment, pending an appeal; but it ·is apparent from the decisions that a bond so executed was not, within the meaning of the law, a *supersedeas* bond. (Cases reviewed.)

3. SUPERSEDEAS BOND—A *supersedeas* bond, under the decisions of this state, is one which suspends the right of the judgment creditor, in case of a judgment for money, to have process by which the property of the judgment debtor may be seized and subjected to sale, pending an appeal; or which suspends the right to have the ordinary fruits of a judgment in other classes of cases, and to have the process by which alone these can be obtained.

4. ACT OF JUNE 4, 1873—Art. 3772, P. D., regulated the issuance of executions; providing that execution might issue at the close of the term at which the judgment was rendered, or sooner, in certain specified cases, unless the adverse party had filed and had approved by the clerk, a "*supersedeas* bond for appeal or writ of error."

5. SAME—EXECUTION—The word " execution," as used in that law, when considered in reference to a judgment for money, meant such process as would authorize the seizure and sale of the judgment debtor's property in order to satisfy the judgment—the final process by which the judgment might be carried into complete effect.

6. SAME—EFFECT—PASCHAL'S DIGEST, ARTICLE 1493—Under the act of June 4, 1873, P. D., art. 3772, no bond except a *supersedeas* will operate to suspend the issuance of execution pending the appeal. Art. 1493, P. D., doubtless remained in force after the passage of that act; but it amounts to a declaration that such a bond as was required by art. 1493 shall not deprive one, who has recovered a judgment, of the right to execution as though no appeal had been perfected.

7. BURDEN OF PROOF—LIEN—PURCHASER AT EXECUTION SALE—The plaintiff relied on his purchase at execution sale, asserting that the property bought was affected by a judgment lien. *Held:* The burden of proving that the lien attached and continued till such time as would give him title through his purchase rested upon the plaintiff. The court was not at liberty to presume this from the fact that the sale was made under an *alias* execution, issued more than four years after execution might have issued. (Authorities cited.)

8. SAME—EXECUTION SALE—PRIOR PURCHASER—A sale to satisfy a dormant judgment, or judgment that has lost its lien, unless set aside by the owner of the property sold, binds him or his vendee by a subsequent purchase, but does not operate against a prior purchaser.

9. ENCUMBERED PROPERTY—RIGHT OF VENDEE—One who has purchased property from another, in whose hands and on whose account it was charged with a lien, may assert the loss of that lien or its extinguishment, however this may be brought about, whenever it becomes necessary for the protection of his own right.

10. CASES APPROVED—Bassett *v.* Proetzel, 53 Tex., 579, and Barron *v.* Thompson, 54 Tex., 236, approved.

VOL. LXVI—14.

Statement of the case.

11. CASES REVIEWED—Ledbetter v. Burns, 42 Tex., 510 ; Ridley v. Henderson, 43 Tex., 137 ; Moore v. Muse, 47 Tex., 216 ; Doss v. Griswold, 1 Tex., 99 ; James v. Langham, 29 Tex., 417 ; Laughter v. Seela, 59 Tex., 178 ; Hawley v. Bullock, 29 Tex., 224, reviewed.

APPEAL from Travis. Tried below before the Hon. A. S. Walker. This was an action of trespass to try title, brought by appellant claiming the south half of lot six, block one hundred and ten, in the city of Austin. The answer of defendant contained general exception, general denial, "not guilty," and a special plea alleging title in the defendant. To this answer, plaintiff replied by supplemental petition. The claims of both parties were derived from Moses Goldstein. On May 19, 1879, a judgment rendered in favor of Kauffman & Runge against Goldstien was recorded in Travis county. That judgment having been appealed from, but affirmed, it was re-recorded in Travis county, August 18, 1883. At an execution sale to satisfy this judgment, the plaintiff, Sigfried Gruner, bought lot six of block one hundred and ten. Previous to the rendition of this judgment against Goldstein, he executed a trust deed on lots six and seven to Don Wilson to secure a loan procured from Henry Hirshfeld. Afterwards, Goldstein sold the south half of lot six to defendant, Westin; the parties, Goldstein, Wilson, Westin and Hirshfeld, reaching an agreement satisfactory to both Westin and Hirshfeld.

The case was submitted to the court and judgment was rendered for the defendant. The court filed the following conclusions of fact and law.

Conclusions of fact:

1. February 21, 1878, M. Goldstein executed a deed of trust to Don Wilson for lots six and seven, in block one hundred and ten, in city of Austin, to secure Henry Hirshfeld a loan of $4,000 by him made to Goldstein. The trust deed was at once recorded.

2. May 13, 1879, in the district court of McLennan county, Kauffman & Runge recovered judgment against M. Goldstein for $2,901 and costs. Copy of this judgment was recorded May 19, in Travis county.

3. July 19, 1879, M. Goldstein filed appeal bond in the sum of $300. The case on appeal was affirmed by the supreme court in 1883, and August 13, 1883, an abstract of the judgment was duly recorded in Travis county.

4. An *alias* execution was issued to sheriff of Travis county on judgment, September 4, 1883. October 16, it was levied on lots six and seven, in block one hundred and ten, in the city of Austin, and November 6 the lots were duly sold by the sheriff—the lot six, for $500, to plaintiff. The same day the sheriff executed to plaintiff a deed to lot six, block one hundred and ten.

5. June 23, 1879, defendant, Westin, negotiated with M. Goldstein for the purchase of the south half of lot number six (the half in controversy), agreeing to pay therefor $2,125, its full value.

6. In negotiating for the half lot, the parties, Goldstein, Westin, Hirshfeld and Don Wilson, agreed upon and executed as follows: Westin insisting upon a title against Hirshfeld's lien, he insisted upon and it was conceded that his purchase money should go direct to Hirshfeld upon his loan as a credit, and that, in consideration of such payment, Hirshfeld's lien should be released upon the south half of lot number six. The cash payment of $1,600 and the promissory note for $525 were delivered and assigned to Hirshfeld, and Hirshfeld, June 27, 1879, released the half lot to Goldstein. On June 23, 1879, Goldstein and wife executed a warranty deed to Westin for the half lot, in consideration of $2,125, of which $1,600 was cash, and note for $525, due in two years thereafter with twelve per cent. interest, which deed was, June 27, 1879, duly recorded in Travis county. On Westin paying to Hirshfeld the note, with interest, $525, May 31, 1880, Don Wilson, trustee for benefit of Hirshfeld, executed a release and extinguishment of the lien to the extent of Westin's purchase. July 17, 1880, Goldstein released the vendor's lien retained in his deed to Westin.

7. This suit was filed January 31, 1884. Westin had not been in actual possession of the half lot for twelve months when the suit was filed.

8. Westin, when he began erecting a house upon the half lot had no notice that plaintiff would contest his (defendant's) right, but he had such notice while erecting the building.

9. At the time of the levy and sale under which plaintiff bought, the defendant was in possession, and was engaged in erecting improvements on the half lot.

10. Defendant, after the sale, completed on said half lot a brick house, worth $3,000.

11. The half lot in controversy is worth $6,000, with improvements, and $3,000 without improvements.

12. The yearly rental value of the half lot and the improvements is $600, and of the lot without improvements $75.00.

Conclusions of law:

1. The lien fixed by the record of the judgment on May 19, 1879, ceased to exist by the failure of Kauffman & Runge to have execution issued upon their judgment within twelve months after the rendition thereof, May 13, 1879.

2. Had the lien been preserved, the purchase by defendant would have been subject to such lien.

3. The sheriff's sale, November 6, 1883, passed no title as against the defendant.

4. The plaintiff, therefore, has shown no title to the half lot sued for, and therefore cannot recover.

*Maxey & Fisher* and *Clark & Dyer*, for appellant, on judgment liens, cited: Boggess *v.* Howard, 40 Tex., 153; Ayers *v.* Duprey, 27 Tex.,594; Sydnor *v.* Roberts, 13 Tex., 598; Hancock *v.* Metz, 15 Tex., 205; Hawley *v.* Bullock, 29 Tex.,'224; Riddle *v.* Turner, 52 Tex., 150; Laughter *v.* Seela, 59 Tex., 179; Freeman on Ex., sec. 29; McSween *v.* Yett, 60 Tex., 183; Rippetoe *v.* Dwyer, 49 Tex., 506; Rivers *v.* Foote, 11 Tex., 671; Shields *v.* Hunt, 45 Tex., 424-426; Custard *v.* Musgrove, 47 Tex., 219; Freeman on Ex., sec. 339; P. D., art. 1493; Ledbetter *v.* Burns 42 Tex., 508; 54 Tex., 374; Moore *v.* Muse, 47 Tex., 216; Woodson *v.* Collins, 56 Tex., 168.

That the plaintiff's was the superior title, they cited: Pomeroy's Eq., sec. 797, note 1; 3 Pomeroy's Eq., sec. 1206, note 1, sec. 1213; Pomeroy's Eq., secs. 791, 792; 1 Jones on Mortg., secs. 855, 856, 857, 858, 859, 863, 864; Garwood *v.* Eldridge, 2 N. J. Eq., 145; Shinn *v.* Budd, 14 N. J. Eq., 234; Lilly *v.* Palmer, 51 Ill., 331; Russell *v.* Pistor, 7 N. Y., 171; Mickles *v.* Townsend, 18 N. Y., 575; Frey *v.* Vanderhoff, 15 Wis., 397; Wadsworth *v.* Williams, 100 Mass., 126; Kilborn *v.* Robbins, 8 Allen, (Mass.) 470, 471; Strong *v.* Converse, 8 Allen, (Mass.) 559; Brown *v.* Lapham, 3 Cush.. (Mass.)'554; Boyd *v.* Parker, 43 Md., 202, 203; Swan *v.* Patterson, 7 Md., 164; Virginia *v.* C. & O. Canal Co., 32 Md., 546; Winans *v.* Wilkie, 41 Mich., 265; Crawford *v.* Edwards, 33 Mich., 355; Miller *v.* Thompson, 34 Mich., 10; McCabe *v.* Swap, 14 Allen, 188; Sheldon on Subr., secs. 240, 241; Ayers *v.* Duprey, 27 Tex., 594; Grace *v.* Wade, 45 Tex., 522; Parker *v.* Coop, 60 Tex., 111, 116; 2 Pomeroy's Eq., sec. 724, pp. 179, 180, note 1; Freeman on Ex., sec. 336; 102 Ill., 148-152; 70 Ill., 504; 30 Ia., 212; 16 Ia., 591; 60 Ind., 452; 61 Ind., 56; 102 U. S., 545; 22 Tex., 464.

*Walton, Hill & Walton*, for appellee, cited: Jemison *v.* Halbert, 47 Tex., 186; Sampson *v.* Wyett, 49 Tex., 631; Russell *v.* McCampbell, 29 Tex., 37; Bradshaw *v.* House, 43 Tex., Tex., 146; Willis *v.* Ferguson, 59 Tex., 176; R. S., 1400, 1403, 3160; R. S., final title, secs. 4, 5; Gautier *v.* Franklin, 1 Tex., 735; Griffin *v.* McKinzie, 7 Ga., 163; Bangor *v.* Goding, 35 Me., 73; Cushman *v.* Flanagan, 48 Tex., 244; Blankenship *v.* Douglass, 26 Tex., 228; Frazer *v.* Thatcher, 49 Tex., 30.

STAYTON, ASSOCIATE JUSTICE.—The court below held that the judgment in favor of Kauffman & Runge, rendered by the district court

for McLennan county, on May 13, 1879, gave lien on the property from the date of its record in Travis county, but held that the lien was lost because execution did not issue within twelve months after the judgment was rendered. The judgment was recorded in Travis county on May 19, 1879, and an appeal from it was perfected on July 19, 1879. The bond given to perfect the appeal was such as was required by art. 1493, P. D. The cause remained in the supreme court until some time in the year 1883, when the judgment of the district court was affirmed, after which, on September 4, 1883, an *alias* execution issued, under which the sale through which appellant claims was made. It does not appear when the first execution issued.

If we consider all the time which could have transpired between the adjournment of the court at the term at which the judgment was rendered and the time the appeal was perfected, and add to this the time which could possibly have transpired between the affirmance of the judgment and the issuance of the alias execution, it will be seen that the periods thus embraced could not amount to one year. The court below then must have held that an execution could legally have issued pending the appeal, and that the failure to have this done, was the failure to exercise the diligence required by law to preserve the lien.

The statute then in force provided "that said lien shall cease and become inoperative, if execution be not issued upon such judgment within one year from the first day upon which such execution can by law be issued thereon." P. D., 7005.

This statute simply means that if there be no legal obstacle to restrain the issuance of an execution at any time during the year following the time at which, under the general provisions of the law, an execution may first issue, that then the failure to issue it within one year shall render the lien acquired through the judgment inoperative.

When might an execution—a writ equivalent to a *fieri facias* at common law—have issued?

In the case of Ledbetter *v.* Burns, 42 Tex., 510, it was held that an execution could not issue pending an appeal under a bond given in accordance with the provisions of article 1493, P. D.

The appeal bond in that case was filed and approved on June 3, 1873, and it was held that the appeal under it did not operate as a *supersedeas*, but, that pending the appeal, such process might be issued as would enable the sheriff to seize and hold the personal property of the appellant during the appeal.

In Ridley *v.* Henderson, 43 Tex., 137, the fact that the bond permitted under article 1493, P. D., was not a *supersedeas* bond was recognized, and in that case there are intimations that such a bond

would suspend the right to enforce the judgment, pending the appeal, but it is most probably true that the decision in that case was based on the fact that the judgment appealed from was one for the recovery of land, and the bond given sufficient, under article 1492, P. D., to operate as a *supersedeas*. It does not appear from the opinion in that case when the appeal was perfected.

The question in Moore *v.* Muse, 47 Tex., 216, was whether a writ of error bond, not in a sum equal to double the value or amount of the judgment, would operate as, or authorize, a *supersedeas*, and it was held that it would not.

The bond in that case was filed on December 4, 1875, and in the course of the opinion it was said that: "It is true, if the case had been taken up by appeal, and a bond in like amount and penalty had been given, although it would not, accurately speaking, operate as a *supersedeas*, (P. D., art. 1491), yet it would have suspended the enforcement of the judgment pending the appeal." Citing Ledbetter *v.* Burns.

It is evident that this question was not before the court in that case. In Doss *v.* Griswold, 1 Tex., 101, speaking of the effect of a bond under art. 1493, P. D., the court say : "In the one hundred and thirty-eighth section of the act cited above, there is a provision that in case the appellant is not able to give the bond required by the section first referred to, he may, nevertheless, appeal, by giving security for no more than the costs and damages of the appeal; and the appeal in such case would not operate as a *supersedeas*." In James *v.* Langham, 29 Tex., 417, speaking of an appeal bond under the same statute, the court said: "An appeal bond, under art. 551, O. & W., binds the appellant to prosecute the appeal to effect, and pay all such costs and damages as shall be adjudged against him in the supreme court, and in this case the appeal does not operate as a *supersedeas*."

That a compliance with the provisions of P. D., art. 1493, had the effect, originally, of suspending the right of the adverse party to seize and sell property, and there by have satisfaction of his judgment, pending an appeal, as was decided in Ledbetter *v.* Burns, we have no doubt; but the cases to which we have referred establish the fact that a bond so executed was not, within the meaning of the law, a "*supersedeas bond*." Prior to the adoption of the Revised Statutes, no appeal or writ of error bonds, other than those executed in accordance with P. D., arts. 1491, 1492 or 1493, were ever recognized as "*supersedeas bonds*," and legislation had, must be construed in the light of this fact.

It may then be said that a "*supersedeas bond*," in the light of the decisions in this state, must be held to be one which suspends the

right of the judgment creditor, in case of a judgment for money, to have process by which the property of the judgment debtor may be seized and subjected to sale, pending an appeal; or suspending the right to have the ordinary fruits of a judgment in other classes of cases, and to have the process by which alone these can be obtained.

So holding, it becomes necessary to inquire whether by subsequent legislation, (P. D., art. 1493.) which it is admitted for a time did have the effect, if complied with, to prevent the issuance of an execution, under which the judgment debtor's property could be siezed and sold under process pending an appeal, had been so modified at the time the judgment in favor of Kauffman & Runge against Goldstein was rendered, as to authorize the issuance of an execution on that judgment pending the appeal perfected under that statute.

The act of January 27, 1842, concerning executions was amended by the act of June 4, 1873, (P. D., 3772) and the amendment to the first and fourth sections of the former act is as follows: "From and after the rising of every court, it shall be the duty of the clerk to tax the costs of suit, in every case incurred by the successful party, and issue execution, indorsing thereon the several items contained in the bill of costs in intelligible words and figures. Provided, however, that after twenty days from the date of any final judgment rendered in any suit in the district court of any county, where the term continues until the business is disposed of, or for a longer time than three weeks, and from the time of overruling motion for new trial, or motion in arrest of judgment therein, and if no *supersedeas* bond for appeal or writ of error has been filed and approved therein, execution may be then issued upon the judgment.

The purpose of this statute was twofold.

1. To establish a general rule to govern the issuance of executions, and to declare under what circumstances that general rule should not be operative

2. To permit executions to issue from courts which, under the law, could hold for a longer period than three weeks, or until the business was disposed of before the adjournment for the term, as did not the former law.

By the terms of that act, one who had recovered a judgment for money, as had Kauffman & Runge, was entitled to an execution at the close of the term at which the judgment was rendered, and might be entitled to that process in the cases specified before that event, unless the adverse party had filed and had approved by the clerk a "*supersedeas* bond for appeal or writ of error.*" The word "execution," as used in this act, when considered in reference to such a judgment as

had been obtained against Goldstein by Kauffman & Runge, evidently meant such process as would authorize the seizure and sale of the judgment debtor's property, for the purpose of paying the judgment— the final process by which the judgment may be carried into complete effect.

This is the popular as well as the legal sense in which the word is used, when not by the context or otherwise qualified. The title of the plaintiff in this case depends upon whether the lien, once fixed upon the property in controversy, continued in force until the execution under which he bought was levied upon it. This must be determined by the facts applied to the statute which we have considered, and to the act of November 9, 1866, (P. D., 7005, 7006,) regulating judgment liens. The sections of the act last cited determine when and how judgments shall have lien; and article 7005 concludes with the following language: "Provided, that said lien shall cease and become inoperative if execution be not issued upon such judgment within one year from the first day upon which such execution can by law be issued thereon."

Holding, as we do, that under the act of June 4, 1873, execution might lawfully have issued in favor of Kauffman & Runge, on or before the close of the term of the court at which it was rendered, the act of November 9, 1866, above cited, makes it clear that the lien acquired by registration was lost, if execution did not issue within the year, however the lien may have been prior to the act of June 4, 1873.

As before said, the case of Ledbetter v. Burns arose under the former law, which did not, as did the act of June 4, 1873, declare, in express terms, that no bond on appeal or for writ of error, other than a *supersedeas* bond should operate to suspend the right of the judgment creditor to his execution.

Article 1493, P. D., doubtless remained in force after the passage of the act of June 4, 1873, and, under it, parties might prosecute appeals as may they now, under the terms of article 1400, R. S.; but, the act of June 4, 1873, amounts to a declaration that such a bond as was required by article 1493, P. D., should not deprive one, who had recovered a judgment, of the right to have his execution as though no appeal had been perfected.

The court below found as a fact, or in effect, that no execution issued within twelve months after it might lawfully have issued, and there is no proof to the contrary. The burden of showing that the lein attached, and that it continued until such time as would give title to the plaintiff through his purchase, rested upon him.

This was a fact, which, if true, could easily have been proved, and

a court is not at liberty to presume it, as is insisted should be done in this case, from the sole fact that the land was sold under an *alias* execution which issued more than four years after an execution might lawfully have been issued. The cases of Laughter *v.* Seela, 59 Tex., 178, and Hawley *v.* Bullock, 29 Tex., 225, to which we are referred as authority for this proposition insisted upon, have no bearing upon the question before us.

It was objected in those cases that the executions issued on dormant judgments, and it was simply held that a person purchasing under such an execution might be protected in his purchase.

If, however, it had been made to appear that an execution issued within twelve months after it might lawfully have issued, even then, under the decisions made in Bassett *v.* Proetzel, 53 Tex., 579, and Barron *v.* Thompson, 54 Tex., 236, the judgment in favor of Kauffman & Runge had lost its lien, for more than three years would have intervened between the executions.

It is insisted that "the fact that an execution may have issued * * * upon a judgment, the lein of which may have been lost, cannot be urged in a collateral proceeding by a stranger to the judgment."

It is certainly true, if the appellee had bought from Goldstein since the appellant purchased the same property under the execution, that he could not set up any matter which Goldstein might not set up; a sale under a dormant judgment, or judgment that had lost its lien, being good against Goldstein, unless set aside by him by some proper proceeding, for good cause, would be binding upon his vendee, who claimed by a subsequent purchase. This rule can have no operation, however, in this case, for the appellee having acquired the legal title to the property long prior to the sale under which the appellant claims, the lien which Kauffman & Runge formerly held being lost, the appellant acquired nothing by his purchase.

We understand that one who has purchased property from another, in whose hands and on whose account it was charged with a lien, may assert the loss of that lien or its extinguishment, however this may be brought about, whenever it becomes necessary for the protection of his own right. Riggs *v.* Hanrick, 59 Tex., 570; Wood *v.* Goodfellow, 43 Cal., 185; Lent *v.* Shear, 26 Cal., 365.

We have no doubt that the appellee was entitled, under his plea of "not guilty," to make the defense, which shows that he has the superior title, legal and equitable, to the property. His special answer set up facts on which he based his claim to equitable relief, in case it should be held that the plaintiff had the superior title to the property, but, in view of the fact that it must be held that the appellee has the

superior and only title to the land, it becomes unnecessary to consider that answer. No other judgment than that rendered could have been rendered under the evidence, and it will be affirmed.

AFFIRMED.

[Opinion delivered May 11, 1886.]