McDONALD v. AYRES. (No. 330–3684.)

(Commission of Appeals of Texas, Section A. June 12, 1922.)

**1. Bills and notes ⊚⟳129(3)—Order accepted by drawee due on demand in absence of other agreement deferring due date.**

An order accepted by drawee is due on demand, unless there is some other understanding or agreement deferring the due date.

**2. Evidence ⊚⟳265(18)—Testimony by plaintiff's attorney that defendant stated that he had collected note, established collection on defendant's failure to deny.**

In action by owner of the one-half interest in note against owner of other one-half interest alleged to have collected note, involving an issue as to whether the note had in fact been collected, testimony of plaintiff's attorney that defendant told him that he had collected the note on particular date *held* to establish the fact of the collection of the note on such date as an undisputed fact, in view of defendant's failure to testify and deny collection of note.

**3. Judgment ⊚⟳632—Judgment that defendant was liable on certain orders to third persons not parties to the action not available to such third persons or their assignee.**

Judgment reciting that plaintiff had given third persons who were not parties to the action orders on defendant, that such orders were outstanding assignments by plaintiff to such person of his claim against defendant to the extent of the amount of the orders, and adjudging that plaintiff was entitled merely to the amount of his claim minus the amount of such orders, and that defendant was liable to such third persons for the sums named in such orders, *held* not to make the judgment available to such third persons, or to plaintiff as their assignee, for the enforcement of the collection of the orders.

**4. Judgment ⊚⟳853(3)—Does not become dormant where no execution is issued within 12 months after rendition where appeal without supersedeas is taken.**

Where an appeal is taken by defendant, and no supersedeas is given, the judgment does not become dormant after 12 months from date of judgment entry in the district court, notwithstanding plaintiff's failure to cause execution to issue within such period, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 3715, 3717, providing that, if no execution is issued within 12 months after rendition of a judgment, the judgment shall become dormant; such statutes having no application where an appeal is taken.

**5. Judgment ⊚⟳903—Action cannot be brought on judgment which has not become dormant.**

In view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 5616, 5617, an action cannot be brought on a judgment which has not become dormant.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by J. K. Ayres against H. D. McDonald. Judgment giving plaintiff insufficient relief was affirmed in part and reversed in part and rendered by the Court of Civil Appeals (233 S. W. 597), and defendant brings error. Judgments of the trial court and of the Court of Civil Appeals reversed, and the case remanded.

See, also, 207 S. W. 686.

L. B. Moody, of Houston, for plaintiff in error.

Woods, Barkley & King and A. M. John, all of Houston, for defendant in error.

RANDOLPH, J. This action was instituted in the district court of Harris county by J. K. Ayres, as plaintiff, against R. D. McDonald, as defendant. From a judgment in part in his favor and in part adverse to him, the plaintiff appealed, and the Court of Civil Appeals reversed the judgment of the trial court as to certain items of account and rendered same in plaintiff's favor. 233 S. W. 597.

The suit by plaintiff was for the recovery of various sums alleged to be due him upon certain orders, judgment, and one-half interest in a note claimed to have been collected by defendant, and in which plaintiff claimed he owned a half interest.

The pleadings of plaintiff and defendant will only be stated as it becomes necessary to explain our rulings herein.

On the 31st day of March, 1917, defendant herein, as defendant in that suit, recovered a judgment in cause No. 67317 against the plaintiff. Also in that suit John B. Peyton intervened, and recovered judgment against the defendant. The court in said judgment stated the account between plaintiff and defendant, and found a balance in favor of defendant for $2,534.82, but at the same time recited in said judgment that the defendant was in possession of a note executed and delivered to him by Keystone Mills Company for the sum of $11,861.24, due and payable —— years after date, with interest at the rate of 8 per cent. per annum from date on which interest had been paid to January 29, 1915, in which plaintiff had a half interest, and adjudging such interest in plaintiff.

In said suit John B. Peyton, intervening, was granted judgment against the defendant for the sum of $925.41, together with interest from May 29, 1913, until paid, at the rate of 10 per cent. per annum. Involved in this general judgment were the following items in plaintiff's favor, to wit: May 22, 1913, order on defendant in favor of J. P. Ross for $751.77; March 7, 1914, order on defendant in favor of J. P. Ross for $801; March 8, 1914, draft on defendant in favor of Peyton and Pegado in the sum of $575—which were credited upon the amount found by the court

to be due the plaintiff by the defendant, and were taken from such amount prior to the rendition of the judgment in cause No. 67317, as shown by the recitals in said judgment.

Plaintiff in his petition in this suit alleges that he had bought the Peyton judgment in said cause No. 67317, and also that the Ross and Peyton and Pegado orders had been assigned to him, and seeks to recover such items from defendant, alleging facts which show that these items and his one-half interest in the Keystone Mills Company note, which he alleges defendant had collected, exceed the amount of the judgment rendered in defendant's favor in cause No. 67317, and prays judgment for such excess.

The first question presented in the application for writ of error for our consideration is the question of limitation as to whether or not it operates to bar the two Ross items and that of the Peyton and Pegado orders. These orders were drawn by the plaintiff on defendant on the dates and for the amounts above stated. The order to Ross for $751.77 was accepted by defendant in writing, but the record nowhere discloses any written acceptance of the other two orders. The other two original orders are not in the record, being established only by the copy of one of them made by Peyton, the assignments to plaintiff, and the recitals in the judgment in cause No. 67317.

These orders, being dated in 1913 and 1914, and not having been accepted in writing, except the Ross order for $751.77, are clearly barred by limitation, unless the fact that they were recognized and credited by the court in its former judgment in cause No. 67317 removes from them the bar of limitation.

The Ross order for $751.77 was accepted by defendant in writing and hence became a contract in writing, and is barred only by the four-year statute of limitation. The Ross order for $751.77 was dated May 22, 1913, and defendant's written acceptance was not dated. It is held in the case of Kampmann v. Williams et al., 70 Tex. 571, 8 S. W. 310, in a case where a draft in these words was being considered by the Supreme Court:

"San Antonio, June 21, 1884.

"Mr. L. Lambert: Please pay to Gus A. Kampmann & Co. five hundred dollars, and charge the same to account of W. J. Prince. Accepted June 23, 1884. [Indorsed] Gus A. Kampmann & Co."

—that such order or draft "became due on the 23d of June, the date of acceptance, or as soon thereafter as demand for payment could reasonably have been made. 1, Daniel on Negotiable Instruments, 542, § 605; Cook v. Cook, 19 Tex. 437." It is also held in that case that such instrument was not negotiable.

[1] In the case at bar the acceptance was by the party upon whom the order was

242 S.W.—13

drawn, and it became due on demand, unless there was some other understanding or agreement deferring the due date. While there seems to be no evidence, except the recitals in the prior judgment sued on, that the payment of this order was deferred, yet all parties appear to have treated the question of its due date as depending on the time of the collection of the Keystone Mills note, and, as there is no question presented to us of the force of the recitals of the former judgment, we shall consider same as being due on the date of the collection of the Keystone Mills note.

The evidence discloses that the Keystone Mills note was collected by defendant on July 26, 1917, and, this suit having been filed January 12, 1920, four years had not elapsed for limitation to run.

[2] However, the defendant contends that the proof is insufficient to establish either the collection or the date on which same was made of the Keystone Mills note; that the collection is only testified to by the plaintiff's attorney; and that the Court of Civil Appeals erred in holding that it was an undisputed fact not necessary to submit to the jury upon which that court could and did render judgment. A. N. John, attorney for plaintiff, testified that the defendant told him that he had collected the Keystone note; that his recollection was that defendant stated that he had collected it on July 26, 1917. The plaintiff's petition was based upon his claim to a one-half interest in this note, and alleges its collection by defendant. The defendant was cited and appeared and filed his answer denying the allegations in the plaintiff's petition. The matter being in issue, and the defendant having full notice, he was bound to know that the plaintiff would introduce some character of proof that the note had been collected. When the witness John testified that the defendant had informed him that the note had been paid, no effort appears to have been made to refute it. The defendant was the one man who could have denied this statement of the witness. He was the one who could have testified that the note had not been paid to him, if such was true. Not having done so, it appears to us that the Court of Civil Appeals was correct in considering it as an established and undisputed fact. Having remained silent when it was his duty in his defense to speak, being in possession of the facts, if they existed, he should have presented them to the court. This duty devolved upon the attorney for defendant if the plaintiff was not present in person at the trial.

To sustain their holding on this question, the Court of Civil Appeals cite Hankins v. Flynt, 136 S. W. 1171; Beene v. Rotan Grocery Co., 50 Tex. Civ. App. 448, 110 S. W. 162.

The case of Hankins v. Flynt, supra, was

an action of trespass to try title brought by Flint against Hankins. Hankins testified that he had taken possession of the land by tenant, and the question was as to the character of his holding. Flynt testified that he had a conversation with Hankins concerning the land in controversy, and asked him why he was paying taxes on the property, and that Hankins told him he did not claim the land, or would not claim it unless he had a deed to it. Hankins never denied having made this statement, and never pretended to have a deed to the land. The Court of Civil Appeals, speaking by Judge Speer, held that, in view of this failure of Hankins to deny the statement, the trial court did not err in holding that there was no such adverse possession as would support the statute of limitation.

Judge Key, in the case of Beene v. Rotan Grocery Co., supra, states the rule to be:

"The only theory on which the judgment could be sustained would rest upon the proposition that, Trotter being an interested party, the trial court was not compelled to give credence to his uncontradicted testimony. These are cases in which that rule has been applied, but we do not think that this case belongs to that class. Trotter's answer, filed months before the case was tried, apprised the plaintiff and Beene and McGilvery of the fact that Trotter charged the latter with perpetrating a fraud upon him. Both of the parties charged with committing the fraud were parties to the suit, and judgment was sought and obtained against McGilvery on account of the commission of that fraud. Notwithstanding these facts, neither Beene nor McGilvery controverted the testimony given by Trotter; in fact, neither of them was placed upon the witness stand. This being the case, and nothing appearing to indicate that Trotter did not testify truthfully, we think it would be an abuse of discretion to disregard his testimony. Under these circumstances, Beene and McGilvery's silence tends strongly to corroborate Trotter."

Notwithstanding defendant had pleaded the Ross item of $801.90 as a defensive matter in the former suit, we think we should sustain defendant's contention as to that item being only a renewal and extension covering the $751.77 Ross order. The instrument speaks for itself, and clearly establishes that fact. This memorandum appears on the draft introduced by plaintiff to establish its existence:

"To cover note of November 1, 1910, for $772.50 and interest, signed by G. O. Bartle, J. K. Ayres and J. P. Ross to Banks, Griffeth & Son, and also to cover former order on R. D. McDonald dated May 22, 1913, for $751.77 in favor of J. P. Ross."

This acknowledgment emanating from the plaintiff absolutely concludes the matter, in the absence of any pleading and evidence of fraud or mistake in its execution. Be that as it may, this item is also disposed of in the ruling upon the question of limitation following.

The defendant contends that the $801.90 Ross order and the Peyton and Pegado order for $575 are barred by limitation of two and four years. The plaintiff insists that they are not barred for the reason that the judgment in cause No. 67317 has established that defendant owed plaintiff those particular items, and that they had "taken the form of a judgment." We cannot sustain the plaintiff's contention, for the reasons which we will state later.

As stated above, these last two orders were nowhere shown to have been accepted in writing by the defendant, and as written evidence of any debt have no standing. They only rest on an assumption that defendant did owe the plaintiff that amount which the plaintiff thereby requested defendant to pay.

[3] As to the contention that they were evidenced by, or had taken the form of the judgment, this the record does not support. The judgment in cause No. 67317 recites, in legal effect, that the plaintiff was entitled to recover a certain sum of money from the defendant; but, as the plaintiff had given the other parties, Ross and Pegado and Peyton, certain orders, these orders were outstanding assignments of that amount of his claim by plaintiff to the parties named in same, and made the defendant liable to said parties for the sums named in said orders. The trial court deducted the amount of said orders from the plaintiff's claim, and rendered judgment in his favor for the balance. At that time the said orders appear to have been in the possession and ownership of the parties named therein. It was their duty to have collected them, if they were collectable. They could not use the judgment in which they were so recited to enforce the collection of same, as they were not parties to the suit in which said judgment was rendered. By their assignments later to the plaintiff he acquired no greater rights than they had.

We therefore hold that, as to the Ross order for $751.77, limitation has not run, and it is not barred; that, as to the Ross item of $801.90, it is only a substitute for the last above-named item; that neither that item nor the Peyton and Pegado order are evidenced by any written contract, and are barred by limitation of two years.

Defendant in his application for writ of error assigns error on the holding of the Court of Civil Appeals that the above-named Peyton judgment was dormant on the 12th day of January, 1920, when this suit was filed as error.

The defendant in his answer in this case in the trial court pleaded the existence of a judgment upon the Peyton order for $925 against him, and that plaintiff ought not to be permitted to maintain suit upon it, as it had not become dormant.

The evidence shows that in the judgment in cause No. 67317 John B. Peyton was granted judgment against defendant upon the order that plaintiff had given him; that this judgment was appealed to the Court of Civil Appeals for the Ninth District, and there affirmed. The mandate in said cause was not issued from said court until October 13, 1919. The Court of Civil Appeals in its opinion in this cause held:

"The Peyton judgment was dormant on the 12th day of January, 1920, when this suit was filed. The judgment was rendered on the 31st day of March, 1917. Appellee duly perfected his appeal from that judgment. Mandate issued from this court on the 18th day of October, 1919, showing that the judgment had been affirmed on May 22, 1918.

"Though execution might have issued on that judgment, under articles 3714, 3715, R. S. 1911, appellee contends that it was not necessary that such execution issue, and that the time within which execution must have issued to save the judgment from becoming dormant did not begin to run until the mandate issued from this court. This is not our construction of our statute regulating the issuance of executions, and providing that a judgment shall become dormant 'if no execution is issued within 12 months after the rendition.' Rev. St. art. 3717. These articles constitute a law of limitation, and must be construed as if they 'had declared a judgment dormant, if executions were not issued in 12 months, from and after the time the same are issuable. The act is, in fact, an act of limitation.'"

The judgment in the trial court was rendered on the 31st of March, 1917, and the Court of Civil Appeals affirmed it on May 22, 1918. But the mandate was not issued for over a year thereafter. The appeal being taken on a cost bond, no supersedeas being given, the plaintiff had the right to have an execution issued, and plaintiff, having this right, is held by the Court of Civil Appeals to have let the judgment become dormant by his failure to have the execution issued within the 12 months from the date of the judgment in the district court. We cannot concede that the district court judgment was a final judgment pending the appeal, and that for that reason this judgment was dormant. Article 3715, Vernon's Civil Statutes, provides that, after the overruling of any motion for new trial or in arrest of judgment, if no supersedeas bond or writ of error has been filed and approved, the clerk shall issue execution upon such judgment upon the application of the successful party. Article 3717 provides that, if no execution is issued within 12 months after the rendition of a judgment in any court of record, the judgment shall become dormant, and no execution shall issue thereon unless such judgment be revived.

[4] Under the above-quoted statutes it appears to us that, while the privilege is given the successful litigant to have execution issued within the 12 months after the rendition of the judgment, and further provides that, where execution has not issued within 12 months after the rendition of the judgment, the judgment shall become dormant, they were never intended to apply to a judgment appealed from. It is true that the party in whose favor the judgment is rendered is given by the statute the right to have execution issued, but this is only a statutory protection given him, which practically requires the debtor under the judgment to give security for the debt evidenced by it, so that the plaintiff may not be defeated of his debt by the delay of the appeal, but it in no wise alters the judgment or changes the case. The appeal of the case is a continuation of the suit, and a suspension of all rights under it pending the appeal; that is, of all rights so far as they are involved directly in the case.

The Supreme Court, in the case of T. T. Ry. Co. v. Jackson, 85 Tex. 608, 22 S. W. 1032, sustains this proposition in our opinion. Judge Stayton in that case says:

"That the proceeding instituted in either method [appeal or writ of error] is but the continuation of the action or suit brought in the trial court, is the settled rule in this state. Moore v. Moore, 59 Tex. 54; Hickcock v. Bell, 46 Tex. 613; Brackenridge v. San Antonio, 39 Tex. 66; Hart v. Mills, 38 Tex. 513; Harle v. Langdon, 60 Tex. 555. * * *

"We are of opinion that appeal or writ of error, whether prosecuted under cost or supersedeas bond, during pendency deprives a judgment of that finality of character necessary to entitle it to admission in evidence in support of the right or defense declared by it; and from this necessarily follows the insufficiency of a plea in bar based on it. That, under the statute, execution may be issued and the judgment be enforced during the appeal when only a cost bond has been given, does not affect the question; for this is by virtue of the statute, which does not undertake to determine the status of the judgment in reference to any matter involved in the questions certified."

Under the authority of the case just above quoted from we hold that the judgment in Peyton's favor, and assigned to plaintiff, was not dormant at the time it was sued on in this case. It therefore becomes necessary for us to decide the question as to whether or not the plaintiff had the right to bring the suit upon that judgment, it not being dormant.

The attention of the writer has been called to the doctrine laid down in the cases of Bank v. Crockett, 31 Tex. Civ. App. 413, 72 S. W. 403, Semple v. Eubanks, 13 Tex. Civ. App. 418, 35 S. W. 509, and Gruner v. Westin, 66 Tex. 209, 18 S. W. 512, in which cases it is held that, where an appeal has been taken on a cost bond, the judgment is not thereby suspended, and that the failure of the party entitled thereto to have execution issued within 12 months after the rendition of the

judgment entails upon him the loss of his judgment lien.

Articles 5616 and 5617, Vernon's Revised Civil Statutes, provides as follows:

Article 5616. "When any judgment has been recorded and indexed, as provided in the preceding articles, it shall, from the date of such record and index, operate as a lien upon all of the real estate of the defendant situated in the county where such record and index are made, and upon all real estate which the defendant may thereafter acquire situated in said county."

Article 5617. "When a lien has been acquired, as provided in this chapter, it shall continue for ten years from the date of such record and index, unless the plaintiff shall fail to have execution issued upon his judgment within twelve months after the rendition thereof, in which case said lien shall cease to exist."

The writer's understanding of the Crockett, Semple, and Gruner Cases, supra, is that they are based solely on the idea that the preservation of this lien is ancillary to the party's right to the statutory execution. In other words, that the plaintiff may not lose his debt pending the appeal, where only a cost bond has been given he has his right to his issuance of an execution so that he may proceed without delay in the collection of his debt. We are of the opinion that the word "execution" is intended to cover every means that the law furnished to collect that debt.

The Court of Civil Appeals for the Third Supreme Judicial District, in the case of Durham v. Scrivener, 228 S. W. 282, passing on the question as to whether or not a garnishment proceeding instituted pending an appeal where cost bond only was given was void, with Judge Jenkins dissenting, held that such judgment was not void, for the reason that—

"The term 'execution' applies to all process issued to carry into effect the final judgment of a court. Any writ which authorizes the officer to carry into effect such judgment is an execution."

Judge Jenkins in his dissenting opinion takes the position that such garnishment is ancillary to the main suit, and must stand or fall with it, and that the enforcement of the judgment in the garnishment proceeding is the enforcement of the main judgment. The purpose of the statute, as stated, in providing for an execution to issue, was to afford the plaintiff an opportunity to collect his debt in the absence of the security of a supersedeas bond. If he preferred to wait until the appeal was settled in order to fully determine his rights, he ought not be penalized by having an appeal determine his rights in advance by barring his judgment before the appellate court could act on his appeal. It will be seen that the decisions in the Gruner, Crockett, and Semple Cases, supra, are all based on the statutory provisions relating to the issuing of execution and its ancillary writs, also.

[5] The judgment being a live judgment, enforceable under execution, and the only ground alleged by plaintiff in his justification for including it in this suit being that it had not been paid, we are of the opinion that the defendant's plea attacking same should have been sustained.

As authority for this holding we quote from Judge Gaines' opinion in the case of Stevens v. Stone, 94 Tex. 417, 418, 60 S. W. 959 (86 Am. St. Rep. 861):

"Where no advantage can accrue to a plaintiff in a judgment by a second suit upon it, we fail to see that there is any propriety in allowing such suit. It is a narrow view of the subject, as we think. to say that the judgment is an evidence of debt and that a debt will support a cause of action. The purpose of judicial actions is to afford remedies for the enforcement of rights. and, where the result of a suit prosecuted to success is to give the plaintiff no better remedy for the enforcement of his right than he had before, no reason other than a technical one can exist for permitting its prosecution. Since equity discourages a multiplicity of suits and will in a proper case enjoin vexatious litigation, and since under our blended system equitable principles in every case have their full scope and effect, it would seem that our court should never allow a suit upon a judgment unless it should be made to appear that the second judgment would be more efficacious than the first. Yet it is broadly held by the great weight of authority that a judgment will support an action without allegation and proof of any additional advantage to be secured by the second recovery. The cases are too numerous for special citation. but will be found exhaustively collated in 11 Encyclopedia of Pleading and Practice, p. 1085 et seq. See, also, for elaborate discussion of the question and the authorities, Pitzer v. Russel, 4 Or. 128, and Solen v. Railway, 15 Nev. 313. It may be that the American courts which hold that there is an absolute right to sue upon a judgment proceed upon a misapprehension of the ruling. of the English courts. It seems that at common law interest upon a judgment was not recoverable by an execution upon it, and that therefore a second action upon it was necessary in order to secure the interest. Also in some cases a second judgment gave the judgment creditor the right to a capias for the satisfaction of his debt when he did not have that right under his first judgment. Therefore we are inclined to hold, with the intimation of this court in former cases (Johnson v. Murphy 17 Texas 216; Parks v. Young, 75 Texas, 278) that a judgment creditor cannot maintain an action upon his judgment without showing some advantage to be gained thereby."

We have considered all the other questions raised by both plaintiff and defendant, and finding nothing in them which we deem necessary to specifically state, they are hereby overruled.

In view of the fact that the matters herein decided are in some things disposed of on the ground of lack of evidence to establish

them, we feel that this cause should not be reversed and rendered, and should be remanded. We therefore recommend that the judgments of the Court of Civil Appeals and of the trial court be reversed, and the case be remanded for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.