## BLACK PANTHER OIL & GAS CO. v. SWIFT.

No. 8146—Opinion Filed Jan. 8, 1918.

(170 Pac. 238.)

### Courts — Exclusive Jurisdiction — Receivership — Royalties.

Where the United States, in the District Court for the Eastern District of Oklahoma, had filed suit to avoid an allotment and patent, and the parties, claiming an interest in said allotment and patent as heirs and lessees, having answered in said suit, and, upon application of both the parties plaintiff and defendant, a receiver had been appointed to cause and direct the production of oil and gas from the land in question, and ordered and directed to make a formal agreement for the development of, the land and the production of oil and gas therefrom, whereby the lessee should deliver or pay to the receiver one-fourth of all oil and gas produced from the land, and said receiver was directed to release to said lessee, free from any claim of any parties to the action, the remainder of the oil and gas produced—that is, three-fourths being the working interest therein—and the receiver had made such agreement as directed by the court, held, that said court acquired jurisdiction of the specific property by taking possession thereof by its receiver, would thereby withdraw said property from the jurisdiction of every other court, and was entitled to retain the control of it until it completely effectuated its judgment or decree in the suit free from the interference of every other tribunal, and that J., a lessor, who had made a lease which was held under assignment by B. P. Co., the same company to which the receiver leased said property, and the said lessor, J., having filed a plea in intervention, in said suit, in the United States court, setting up his claim in and to the property in question and his interest in the oil rights therein, and praying for an adjudication as claimed by him, and then assigned his interest to his claim in the oil rights to S., that S. could not, during the pendency of the suit in the United States court, litigate his claim to the royalty by virtue of the assignment to him from J. in the state court.

(Syllabus by West, C.)

Error from the District Court of Creek County; Ernest B. Hughes, Judge.

Action by George M. Swift against the Black Panther Oil & Gas Company. Judgment for plaintiff, and defendant brings error. Reversed, with direction to dismiss action.

Stuart, Cruce & Cruce and Keaton, Wells & Johnston, for plaintiff in error.

Miller & Dean, F. F. Lamb, and Malcolm E. Rosser, for defendant in error.

Opinion by WEST, C. This was an action commenced in the district court of Creek county, Okla., on February 27, 1915, by defendant in error, plaintiff below, against plaintiff in error, defendant below, to recover an oil royalty of one-eighth under a certain oil lease contract executed by Saber

Jackson to J. Coody Johnson on the 13th day of November, 1913, covering the northwest quarter of section 9, township 18 north, range 7 east. The parties will be referred to as they appeared in the court below.

To this action the defendant, the Black Panther Oil & Gas Company, filed a plea to the jurisdiction of the court. Same was overruled, and plaintiff filed amended petition, defendant filed answer thereto, plaintiff filed a reply, and on February 5, 1915, cause resulted in a judgment in favor of plaintiff for $113,330.56 as royalty due plaintiff, assignee of Saber Jackson, against Black Panther Oil & Gas Company, of lessee under the oil and gas lease executed by Saber Jackson to J. Coody Johnson, and for further relief, to review which defendant has perfected his appeal and assigns a number of errors.

The third assignment of error is that the court was without jurisdiction to hear and determine the cause, which is argued under defendant's second proposition, which is as follows:

"That the pleadings filed by the respective parties in the court below, especially Swift's reply and the exhibits thereto, show that said court had no jurisdiction of the subject-matter of said action, jurisdiction thereof having been acquired by the federal District Court for the Eastern District of Oklahoma long prior to the commencement of this action."

From the pleadings filed and exhibits attached thereto it appears that the land in question covered by the oil and gas lease, the subject of this litigation, had prior to May, 1913, been allotted and patented under the act of Congress to Barney Thlocco, a Creek Indian. Before the execution of the oil and gas lease in question, and on November 1, 1913, the United States commenced a suit in equity in the United States Court for the Eastern District of Oklahoma against Bessie Wildcat, the Black Panther Oil & Gas Company, Martha Jackson, a minor, Saber Jackson, as her guardian and next friend, and others, to set aside and avoid the allotment and patent to Barney Thlocco, and to exclude the defendants in that suit from any right or title to the land, and to the oil and gas that might be derived therefrom. The defendant Martha Jackson, a minor, by her guardian, Saber Jackson, answered, and claimed that Barney Thlocco died in 1904 intestate, and that at the time of his death that Annie Nevy was

his sole heir, and that Saber Jackson had married her, and that Martha Jackson was the fruit of that marriage, and that Annie Jackson nee Nevy, had also died, and that consequently Martha Jackson was the sole heir and the owner of the land, and that Saber Jackson, surviving husband, had a life estate in the land as tenant by the curtesy consummate. J. Coody Johnson's interest under the lease was subsequently assigned to and became vested in the Black Panther Oil & Gas Company on February 4, 1914. The Black Panther Oil & Gas Company by assignment became the lessee of Martha Jackson, by her guardian, Saber Jackson, under an oil and gas lease, whereby it was agreed to pay as rental to her one-eighth of all oil and gas produced and saved from the land in question.

On April 17, 1914, on the petition of plaintiff in the suit in the United States Court for the Eastern District of Oklahoma and some of the defendants therein, including Martha Jackson, by her guardian, Saber Jackson, and with the consent of all defendants before the court at that time, the United States court appointed a receiver to cause and direct the production of oil and gas from this land, and ordered and directed him to make a formal agreement with the Black Panther Oil & Gas Company for the development of the land and the production of oil and gas therefrom, on the following terms, among others: That the Black Panther Oil & Gas Company should deliver or pay to the receiver one-fourth of all the oil and gas produced from the land; that the Black Panther Oil & Gas Company should give to the receiver, for the benefit of the parties to the suit, a satisfactory bond to perform this provision of the contract, and the receiver in that suit was authorized and directed to release to the Black Panther Oil & Gas Company and its assigns, free from any claim of any party to that action, three-fourths of the oil saved from the premises, being the working interest of the oil and gas produced by said company from the above-described land—that is, all the oil and gas produced in excess of the royalty of one-fourth. Thereafter, and pursuant to this order of the United States court, the receiver and the Black Panther Oil & Gas Company made a formal written agreement, which embodied the terms specified in the order of the court, and thereunder the Black Panther Oil & Gas Company began producing or causing others to produce oil and gas from the land, and has been paying or delivering one-fourth thereof to the receiver or to his order.

On November 23, 1914, Saber Jackson, who had not theretofore been a party to the suit in the United States court, otherwise than as guardian for Martha Jackson, a minor, intervened in said cause in his own behalf and filed answer and cross-bill, wherein he set forth his claim to a life estate in the land as tenant by curtesy, and prayed that he be decreed to have such real estate, and to have such further relief as might be just. His answer and cross-bill opened with the following words:

"Comes now Saber Jackson, and by leave of court first obtained files this his answer and cross-bill in the above-entitled cause, hereby submitting to all of the orders, judgments, and proceedings heretofore had in said cause, as fully as though he had been made a party defendant herein from the institution of the suit."

And thereafterward on December 4, 1914, Saber Jackson assigned to George Swift all his rights to any oil and gas that has been or might be derived from the land under and by virtue of the lease of November 13, 1914, to J. Coody Johnson, who as lessee had been succeeded by the Black Panther Oil & Gas Company in February, 1914. In February, 1915, Swift presented to the United States court a motion for leave to intervene as a defendant, and tendered his answer and cross-bill, and in his motion and in his cross-bill he set forth the claim of Saber Jackson to an estate by curtesy consummate in the land, Jackson's lease to Johnson and the assignment thereof to the Black Panther Oil & Gas Company, and Jackson's assignment of his lessor's interest in said lease to Swift, and praying, among other things, that he might be decreed to be the owner of the estate by curtesy consummate in the land of one-eighth of all the oil which had been or should be produced from the land by the Black Panther Oil & Gas Company. On February 22, 1915, the United States court denied his motion for leave to intervene. Having been denied his right to present to the United States court his claim by curtesy in the land and to one-eighth of all the oil and gas extracted therefrom by his lessee, the Black Panther Oil & Gas Company, plaintiff herein, brought this suit.

From the foregoing it will be apparent that after the institution of the suit by the United States government against Jackson and other defendants, who claimed to be heirs of Barney Thlocco, all of the parties claiming an interest in said allotment as heirs or as leaseholders, were desirous of uniting in one concerted action for the purpose of defeating the government in its effort to cancel said allotment. It is also apparent in that suit that both the government, who was plaintiff, and the heirs and leaseholders, defendants, were fearful that, unless some steps were taken to protect said allotment during the progress of the litigation from drainage by adjoining leaseholders, the value of said property would be considerably diminished, and upon a petition for a receiver filed in said action all the parties before the court united in invoking the authority of the court to appoint a receiver and directing him to enter into a lease contract with plaintiff for the purpose of developing said allotment for oil and gas, and thus protecting same from drainage by adjoining leaseholders. It was agreed by all the parties in said suit in the United States court that the receiver should reserve in said lease, which he was directed by the court to make with the defendant in this suit, a royalty of one-fourth, which should be held in trust for the benefit of those whom it might finally be determined were entitled thereto, and that the lessee of the receiver, the Black Panther Oil & Gas Company, the defendant here, was guaranteed by the court under said receivership three-fourths of all oil and gas produced upon the said allotment, free from all claims of heirs and leaseholders for operating and developing said land for oil and gas, and Saber Jackson, who was the assignor of the plaintiff here, intervened in said suit, and by his intervention subjected his interest in said premises to the administration of the United States Court for the Eastern District of Oklahoma, and subjected himself to all orders and decrees theretofore made in said court; and it seems perfectly plain that whatever interest the said Saber Jackson had in said lands, or whatever interest or rights that he might claim under and by virtue of his oil and gas lease, which he had made covering the Barney Thlocco allotment, which was at the time held by the Black Panther Oil & Gas Company as assignee, the same was renounced in so far as it was in conflict with the three-fourths working interest of the defendant, the Black Panther Oil & Gas Company, as guaranteed to it by the receivership contract at that time; that it was his intention, and it was so understood by the parties, that whatever interest he might have in said premises by virtue of his heirship, or by virtue of his lease contract, which was held at that time by the defendant, would be made out of the one-fourth royalty interest reserved by said court for the benefit of the parties to whom

the court might find should be entitled to the same; and it is our opinion that when the United States court took jurisdiction of said cause under the pleadings filed, and took possession of said property by virtue of the receivership proceedings invoked by all the parties to said suit, of which Saber Jackson was one, the court had jurisdiction for all purposes so long as it was endeavoring to administer same and its jurisdiction was exclusive until said cause and all controversy therein were finally concluded. The court not only had jurisdiction of the subject-matter and of the parties to said suit, but it had possession of the res, the land, which was in controversy by reason of the receivership proceedings, and, as was said in Farmers' Loan & Trust Co. v. Lake Street Elev. Ry. Co. 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667:

"The possession of the res vests the court which has first acquired jurisdiction, with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court; but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, to administer trusts or liquidate insolvent estates, and in suits of a similar nature, where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to federal and state courts."

And in the case of Swift v. Black Panther Oil & Gas Company, decided by the Eighth Circuit Court of Appeals, wherein the plaintiff in this suit undertook to levy an execution issued out of the court below in this cause of action upon the property of the defendant, defendant failed and refused to file a supersedeas bond. The court quoted the following language from Lang v. Choctaw, Oklahoma & Gulf R. C., 160 Fed. 359, 360, 87 C. C. A. 311, 312:

"The court which first acquires jurisdiction of specific property by the lawful seizure thereof, or by the due commencement of a suit that court, from which it appears that it is, or will become, necessary to a complete determination of the controversy involved, or to the enforcement of the judgment or decree therein, to seize, charge with a lien, sell, or exercise other like dominion over it, thereby withdraws that property from the jurisdiction of every other court and entitles the former to retain the control of it requisite to effectuate its judgment or decree in the suit free from the interference of every other tribunal. Farmers' Loan & Trust Co. v. Lake Street Railroad Co., 177 U. S. 51, 61, 20 Sup. Ct. 564, 44 L. Ed. 667; Peck v. Jenness, 7 How. 612, 12, L. Ed. 841; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981; Central Bank v. Stevens, 169 U. S. 432, 18 Sup. Ct. 403, 42 L. Ed. 807; Williams v. Neely, 67 C. C. A. 171, 185, 134 Fed. 1, 15, 69 L. R. A. 232; Barber Asphalt Co. v. Morris, 66 C. C. A 55, 58, 132 Fed. 945, 948, 67 L. R. A. 761; Gates v. Bucki, 53 Fed. 961, 969, 4 C. C. A. 116, 128, 129. * * * The jurisdiction of a court over a subject-matter or a cause once lawfully acquired includes the power to enforce its judgment or decree, and to protect the title of those holding under it from every attempt to avoid or annul it. Chicot Co. v. Sherwood, 148 U. S. 529, 533, 534, 13 Sup. Ct. 695, 37 L. Ed. 546; Julian v. Central Trust Co., 193 U. S. 93, 112, 24 Sup. Ct. 399, 48 L. Ed 629; Wabash Railroad Co. v. Adelbert College, 208 U. S. 38, 28 Sup. Ct. 182 [52 L. Ed. 379]; Barber Asphalt Pav. Co. v. Morris, 132 Fed. 945, 949, 66 C C. A. 55, 59, 67, 67 L. R. A. 761; Brun v. Mann. 80 C. C. A. 513, 151 Fed. 145 [12 L. R. A. (N. S.) 154]."

In the case in United States court involving this allotment, the court having before it the heirs and leaseholders interested in the same, and having taken possession of said property subject to the interest of all of the parties to the suit, including Saber Jackson, the assignor of the plaintiff herein, and directing its management to protect said property from depreciation by drainage of adjoining leaseholders, and having by agreement of parties to said suit guaranteed to the Black Panther Oil & Gas Company three-fourths of the oil and gas produced from said allotment for its working interest therein, and having reserved the one-fourth interest as royalty to be held in trust by the receiver, to be disposed of by the court to the heirs and leaseholders as their respective interests may appear therein, it is our opinion that no other court had jurisdiction of this subject-matter or the interests involved in this litigation, while said cause was pending in the United States District Court for the Eastern District of Oklahoma, and that the state court was without jurisdiction to hear and determine the controversies in this litigation.

It is true that the plaintiff in this suit, as was suggested by the learned counsel for defendant in error, has a right to have his

interest and cause litigated in a court of competent jurisdiction, but having subjected his interest in the property in controversy to the United States Court for the Eastern District of Oklahoma, the state court would be powerless to grant him relief sought so long as said cause was pending before said court. We concur in the views expressed by the Eighth Circuit Court of Appeals in case of Swift v. Black Panther Oil & Gas Co., 244 Fed. 20, wherein it stated that the United States District Court for the Eastern District of Oklahoma was in error in refusing to permit the plaintiff in this suit from intervening in that court. Because of this error on the part of the United States Court for the Eastern District of Oklahoma, plaintiff's remedy was not by seeking relief in another court, but to appeal from said order denying him the right to intervene and compel said court to take jurisdiction of his cause.

For the reason herein stated it is our opinion that this cause should be reversed, with directions to the lower court to sustain the plea to its jurisdiction and dismiss plaintiff's action.

By the Court: It is so ordered.