**UNITED NORTH & SOUTH OIL CO., Inc.,**
**v. MEREDITH et al.   (No. 6760.)\***

(Court of Civil Appeals of Texas. Austin.
Dec. 20, 1923. Rehearing Denied
Jan. 23, 1924.)

1. Receivers ⬗➪3—Application not maintainable in absence of cause of action against defendant.

An application for receivership does not alone constitute a cause of action and cannot be maintained in the absence of some cause of action against defendant asserted either in the application or in the suit to which it is ancillary.

2. Receivers ⬗➪3—Final adjudication of rights of parties in main suit bars appointment.

If all the rights of the parties in a suit are finally adjudicated by the judgment, the trial court has no power to entertain an application for appointment of a receiver.

3. Appeal and error ⬗➪1—Proceeding to review a judgment is continuation of action.

A proceeding to review a judgment either by appeal or writ of error is but a continuation of the action in the trial court.

4. Judgment ⬗➪580—Deprived of finality by appeal on supersedeas or cost bond.

Whether an appeal from a judgment is prosecuted under supersedeas or cost bond, the judgment is deprived of that finality necessary to make it admissible in evidence or the basis of a plea in bar in support of the right or defense declared by it while there is an appeal pending.

5. Receivers ⬗➪5—Right to appointment during appeal; "pending."

While an appeal is pending, the controversy in suit which is carried forward into the appeal is a cause of action "pending," and the same right exists to have a receiver appointed under Rev. St. art. 2128, subd. 1, to protect the property in litigation as before judgment pending trial.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Pending.]

6. Partition ⬗➪53—That owner in common of mineral interests refused to co-operate in preventing waste justified appointment.

In a suit to cancel an oil company's oil lease as a cloud on title and to partition the mineral interests, defendant's refusal as owner in common with plaintiffs to co-operate in drilling offset wells necessary to protect against drainage by neighboring wells held valid ground for appointment of a receiver pending appeal both at common law and under Rev. St. art. 2128, subd. 1, authorizing appointment in actions between parties jointly interested in property, though defendant was not in possession or preventing applicants from acting alone.

7. Appeal and error ⬗➪761—Appellant's assertion of purpose for seeking receiver for oil property held a mere conclusion.

On appeal from an order appointing a receiver to develop oil lands pending appeal from a judgment, appellant's assertion that applicant's only purpose was to avoid the consequences of their acts in developing the property in the event their judgment was reversed held but a conclusion.

8. Partition ⬗➪53—That certain leases of oil and gas lands did not entitle royalty owners to appointment of a receiver did not affect other parties' rights.

In a suit to partition leasehold interests in oil and gas lands, the fact that leases of some of the applicants did not entitle them as royalty owners to the appointment of a receiver did not affect the right of the leasehold owners under Rev. St. art. 2128, subd. 1, authorizing such appointment on petition of one joint owner.

---

⬗➪For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Writ of error granted March 12, 1924.

**9. Mines and minerals ⚷78(1)—Leases held to import implied covenant to drill offset wells.**

Oil and gas leases *held* to import an implied covenant that lessee under proper circumstances would drill offset wells to prevent drainage to adjacent wells though not in terms requiring immediate development.

**10. Mines and minerals ⚷52—Implied covenant in oil and gas leases to drill offset wells not enforceable at law so as to exclude receivership.**

Royalty owners have no adequate remedy at law to enforce an implied covenant in their leases of oil lands requiring lessees under proper circumstances to drill offset wells to prevent drainage into adjacent wells, and may petition for receivership under Rev. St. art. 2128, subd. 1, in a suit involving the property.

**11. Receivers ⚷130 — Power to convey title should be granted only where no other way to protect res.**

Where the rights of litigants in relation to the res can be reasonably protected in any other way, the court should not appoint a receiver under Rev. St. art. 2128, subd. 1, with authority to convey title to leasehold interests in property.

**12. Mines and minerals ⚷48, 55(1)—Oil and gas are part of realty severable by grant.**

Oil and gas in place not only constitute part of the realty, but are subject of severance by grant.

**13. Mines and minerals ⚷55(1) — Minerals may be severed by reservation in grant.**

Severance of title to minerals from the land title may be made by reservation in grantor's deed to the fee and generally speaking the same rules apply to such title as to real estate.

**14. Mines and minerals ⚷47—Ownership of oil and gas in owner of land in which they are brought to surface; "minerals."**

Oil and gas are minerals, yet, having peculiar attributes not common to other minerals because of their fugitive nature or vagrant habits, the law recognizes title to them in the owner of the soil in which they are brought to the surface.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mineral.]

**15. Mines and minerals ⚷52—Owner of oil and gas cannot enjoin draining by adjacent owner.**

The owner of adjacent lands cannot enjoin a landowner from draining, through wells on his land, the oil which may in its original natural state be in place under the adjacent lands, since his ownership is qualified by the fugitive nature of oil.

**16. Courts ⚷92—"Obiter dicta" defined.**

A holding on a point not necessary to the decision constituted "obiter dicta."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dictum.]

**17. Courts ⚷107—Supreme Court in adopting Commission's judgment necessarily approved all holdings necessary thereto.**

In adopting a judgment recommended by the Commission, the Supreme Court must necessarily approve all holdings necessary to that judgment, though it adopted the judgment only.

**18. Mines and minerals ⚷52—Facts held to warrant appointment of receiver with authority to lease.**

Where mineral interests in several tracts of land containing valuable deposits of oil and gas were the subject of a partition suit and there was imminent danger of loss by drainage through operation of wells on adjacent land and the lease owners were unable to agree upon any plan of development for such minerals, *held*, that the court could appoint a receiver under Rev. St. art. 2128, subd. 1, with authority to contract for exploration upon consideration of a substantial part of the oil and gas as essential to protect against destruction.

**19. Partition ⚷114(2)—Costs of receivership not taxable to defendant on plaintiff's petition for receiver.**

No personal liability for costs could be taxed against defendant oil corporation as joint lessee of oil and gas lands for costs of a receivership appointed in partition suit on plaintiff's petition under Rev. St. art. 2128, subd. 1, authorizing appointment of receivers in actions between parties jointly interested in the property.

Appeal from District Court, Caldwell County; M. C. Jeffrey, Judge.

Suit by W. P. Meredith and others against the United North & South Oil Company, Incorporated, and others. From an order appointing a receiver, the named defendant appeals. Modified and affirmed.

R. B. Ellis, of Lockhart, and White, Wilcox, Graves & Taylor, of Austin, for appellant.

E. B. Coopwood and C. F. Richards, both of Lockhart, and Leon Green, of Austin, for appellees.

McCLENDON, C. J. The present appeal is from an order appointing a receiver of property in litigation with powers to develop its mineral resources by executing oil and gas leases, giving to the lessees an interest in the minerals. The order was made after final judgment in the main case and pending appeal from that judgment. The application and appointment are predicated upon Rev. St. art. 2128, subd. 1, which authorizes the appointment of a receiver—

"in an action * * * between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured."

⚷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

From the record before us which embraces the pleadings and judgment in the main case, as well as the pleadings, statement of facts, and order in the receivership matter, we make the following statement:

The main suit was brought by Meredith, Coopwood, and Richards, as plaintiffs, against Alexander, Merriweather, Kelley, and the United North & South Oil Company, Incorporated, which latter will be referred to as the oil company, as defendants. The purpose of the suit was to cancel an oil and gas lease upon four contiguous tracts of land designated by the numbers 1, 2, 3, and 4, which lease had been executed on June 24, 1921, by the owners of the land in favor of the oil company, and to remove cloud from plaintiffs' titles as the owners of oil leases by the landowners subsequent to the oil company's lease, and for partition of the mineral rights in the land in case it should appear that defendants had any interest therein. Cardwell, Dorn, and Cosey intervened, asserted certain interests in the property, and otherwise adopted plaintiffs' pleadings. Answers filed by the defendants oil company, Merriweather, and Kelley were merely by way of demurrer, exception, general denial, and pleas of not guilty. Defendant Alexander made default, and as he was decreed to have no interest in the property, he will not be further noticed.

It appears from the judgment that the case was tried to a jury upon a single special issue: Whether a certain payment by the oil company was a "down payment up to June 24, 1923," or "rentals to June 24, 1924." The jury answered that it was "down payment to June 24, 1923." Upon this verdict judgment was rendered canceling the oil company's lease except as to a ⅓ interest in tracts 3 and 4, and, except as to such ⅓ interest, decreeing plaintiffs' lease valid. The interests of the several parties in the fee (as distinguished from the minerals) and in the minerals, both leasehold and royalty, were decreed by the court, partition in kind of such interests ordered, and commissioners of partition appointed. The interests so decreed by the court were as follows:

As to the fee Dorn was decreed sole owner of tracts 1 and 2; and tracts 3 and 4 were decreed Dorn 1/6, Cosey ½, Merriweather 1/6, and Kelley 1/6.

The mineral rights were divided into lease rights and royalty rights, the former constituting ⅞ of the minerals and the latter ⅛; the lease rights being subject to the cost of production of oil, gas, and other minerals, and the royalty rights free from cost of production, development, and exploration.

The lease rights were decreed to Richards and Coopwood in all four tracts, except ⅓ interest in tracts 3 and 4, which was decreed to the oil company.

The royalty rights were decreed to be owned as follows: In tracts 3 and 4 by Merriweather 1/6; by Kelley 1/6; by Cosey ½; by Cardwell 1/36; by Richards and Coopwood 1/96; by Dorn 7/96. In tracts 1 and 2 by Cardwell 1/6; by Richards and Coopwood 19/48; by Dorn 7/16.

The oil company alone appealed from this judgment, the appeal being upon a cost bond without supersedeas. The judgment was rendered March 29, 1923.

On April 25, 1923, Cardwell, Cosey, and Dorn filed a petition for a receiver, naming as defendants Merriweather, Coopwood, Richards, Kelley, and the oil company. All the named defendants, except Kelley and the oil company, answered joining in the prayer for receiver. One Triplett intervened, as assignee of the rights of Kelley, and joined in said prayer. The oil company answered contesting the application. It will thus be seen that the receivership is sought by all interested parties, except the oil company, and the latter alone is resisting it.

The grounds upon which a receiver was sought, as gathered from the pleadings, may be briefly summarized as follows: That the land in suit is a long, narrow strip lying in a northeast-southwest direction; upon its southeast side it abuts upon lands already developed and producing oil and gas; that several producing wells are within 150 feet of its southeast line, and several other wells are rapidly being drilled within a like distance of that line;. that there are a larger number of other wells in close proximity, but at further and varying distances from said lines, and an additional large number so situated being drilled; that the oil strata under these lands is of such a character that oil rapidly drains into these wells from adjacent lands; that a number of these wells are already showing water in rapidly increasing quantities, and the gas pressure in them is rapidly decreasing; that the other owners of the leasehold interests have made every effort at agreement with the oil company to some plan by which the property may be developed, but that no agreement could be reached; that if offset wells are not drilled upon the land in suit, all the oil, or in any event, a large part of it, will be drained from the land in question, and the oil and its value lost to the owners, before the main suit can be finally adjudicated upon appeal; that if a receiver is appointed, with power to contract for drilling offset wells, he can make such contracts as will develop the property and secure it or its value to the owners, "for a consideration to be paid out of the production of the wells drilled on said lands, and in addition thereto large sums of money for the leasehold rights of said land can be obtained and saved to said owners of said leasehold rights, in the event said lands become productive of oil and gas; that the development of said land for oil and gas by this court's receiver can be done at an economical and reasonable cost and expense"; that with-

out a receiver the mineral rights in the land cannot be developed on account of the assertion of adverse claims by the oil company in its pending appeal; and therefore that unless a receiver be appointed the property, as to the oil and gas thereunder, will be entirely or, in any event, in a very large measure, lost or destroyed, pending the appeal.

The answer of the oil company, in addition to certain demurrers and exceptions and a general denial, contained special pleas in which it was alleged that the leases of Coopwood and Richards of September 9 and 11, 1922, contained provisions for extension, by payment of certain rentals beyond the time when the appeal would be determined, without the obligation of drilling for oil during that period, and that the oil company's lease contained a like provision, and that it would be inequitable for the court to require development of the mineral rights at an earlier date than the lessors could require it under their contracts. This answer was verified, and the facts therein alleged were not controverted.

Upon the hearing the applicants introduced testimony amply supporting all the material allegations of their pleadings, substantially as above enumerated, and we find the facts accordingly. No controverting evidence was offered by the oil company. We think it unnecessary in more detail to state the evidence.

The court granted the application and appointed a receiver of the property with powers as follows:

"That said receiver shall possess and have control of said 156 acres of land in so far as may be necessary and proper to explore and develop or cause the same to be explored and developed, as to the minerals thereunder exclusive of all the parties hereto and said receiver is hereby directed instructed to immediately contract for the development, develop or cause to be developed, subject to the orders of this court, said 156 acres of land, for a portion of, or a consideration to be paid out of, the seven-eighths mineral leasehold rights; to receive and hold the consideration or considerations of any and all such contracts; to receive and hold any and all oil coming into his possession as such receiver from the development of said land subject to the further orders of this court, and to provide suitable storage therefor; to sell and contract for the sale of any and all oil coming into his possession as such receiver, subject to the orders of this court; to deliver to the owners of said one-eighth mineral royalty their respective interest therein; to make transfers and deeds of conveyance, under the directions and orders of this court as may be proper and necessary in the premises; to do any and all acts and things, subject to the orders of this court, as may be necessary and proper for the protection of the minerals in, on and under said land, and that may be produced therefrom, and the rights and interest of the owners thereof, and the proper development of said 156 acres as to the minerals thereunder; to bring and defend actions in his own name as such receiver, to receive rents, collect claims, compromise demands, pay taxes, employ counsel and clerical aid and all such expenses of such receiver, including attorney's fees, receiver's compensation, and all other necessary and legitimate expenses incurred by such receiver in the proper exercise of this receivership, to be paid as a part of the court costs of this proceeding.

"It is further ordered and adjudged by the court that all contracts, conveyances and other acts of such receiver are subject to the orders of this court, and that such receivership shall continue subject to the further orders of this court."

The receiver was required to give a statutory bond in the sum of $25,000.

To this order the oil company excepted, gave notice of appeal, and has perfected its appeal to this court.

While the oil company has filed a number of assignments of error and propositions in support of them, the substance of the contentions thus urged may be reduced to the following propositions:

First. That the appointment of a receiver is not a cause of action in itself, and unless a cause of action against the defendant is asserted in the application for receiver or in the main suit to which the application is ancillary, the application cannot be maintained; that the judgment in the main suit had become final, adjudicating the rights of the parties in the property, and that no independent cause of action against the oil company was alleged in the application for receiver.

Second. That it was not alleged or shown that the oil company was in possession of the property or was excluding applicants from its possession, or that it was doing or threatening any act against the applicants which would give rise to any complaint on their part, in the absence of which, it is contended, no ground existed to appoint a receiver.

Third. That the decree vested ownership in the property in complainants, either absolutely or as joint tenants with the oil company, and they have the unrestricted right to develop the mineral rights therein; and the only purpose in seeking a receiver is to avoid the consequences of their acts in developing the property in the event the judgment under which they claim is reversed—all of which, it is contended, shows no right to a receiver.

Fourth. That there is no showing that the leases, under which the royalty owners claim, require the immediate development of the property; or, if such development is required, that the royalty owners cannot be fully compensated in damages for failure to immediately develop the property.

Fifth. That when the application shows that the applicants and the defendant are joint owners of the property, the court is without power to appoint a receiver to con-

vey or make title to the leasehold interests in the property, and that portion of the order is void.

[1, 2] That an application for receiver does not alone constitute a cause of action and cannot be maintained in the absence of some cause of action against the defendant asserted either in the application itself or in the suit to which it is ancillary is too well settled to require discussion. If, therefore, appellant's contention that all the rights of appellees brought in controversy in the main suit were finally adjudicated by the judgment in that suit were correct, then it would follow that the trial court had no power to entertain the application. But such is not the case.

[3-5] It may be that if the decree were final as settling the respective interests of the parties in the minerals, and ordering them partitioned in kind, a receiver would not be necessary to safeguard the interests of appellees pending the partition of the mineral rights. But the decree was not final as an adjudication of the mineral rights. In this state "a proceeding to review a judgment either by appeal or writ of error 'is but the continuation of the action in suit brought in the trial court.'" The judgment thus appealed from is deprived of that finality necessary to make it admissible in evidence, or the basis of a plea in bar in support of the right or defense declared by it so long as there is an appeal pending. And this is true whether the appeal is prosecuted under supersedeas or cost bond. Ry. v. Jackson, 85 Tex. 605, 22 S. W. 1030; Faulk v. Sanderson, 89 Tex. 692, 36 S. W. 403; Grocery Co. v. Ry., 95 Tex. 486, 68 S. W. 265, 59 L. R. A. 353; McDonald v. Ayres (Tex. Com. App.) 242 S. W. 192; Oil Co. v. McCarthy (Tex. Com. App.) 245 S. W. 651. This question is fully discussed in the last case cited. It necessarily follows that so long as there is an appeal pending the controversy in the suit which is carried forward into the appeal is a cause of action pending, and the same right to a receiver, to protect the property in litigation, exists after judgment, and pending the appeal, as existed before judgment and pending the trial. This exact question was involved in Waters-Pierce Oil Co. v. State, 47 Tex. Civ. App. 299, 105 S. W. 851 (writ of error refused), wherein an order had been made appointing a receiver of the property of the oil company after judgment and pending appeal upon supersedeas bond; this court holding in that case that the rights of the state under a judgment for penalties and forfeiture of permit to do business in Texas on account of violation of the anti-trust laws were not fully protected by a supersedeas bond securing the payment of the money judgment. See, also, Stone v. Stone (Tex. Civ. App.) 43 S. W. 567; Shaw v. Shaw, 51 Tex. Civ. App. 55, 112 S. W. 124; High on

Receivers, § 110; Tardy's Smith on Receivers, § 823.

[6] The second proposition, above, is not applicable to the case at bar. The application for receiver in this case is not predicated upon any wrong done or threatened by the oil company, but upon the statutory and common-law right to a receiver to protect the res in litigation upon the ground that it can be saved to the owners from destruction or material loss in no other way. Most of the cases cited in support of this contention of appellant present an altogether unanalogous state of facts from the present. The cases most strongly relied upon and most nearly in point are Hermann v. Thomas (Tex. Civ. App.) 143 S. W. 195; and Freer v. Davis, 52 W. Va. 35, 43 S. E. 172, 94 Am. St. Rep. 910. The former was a suit in trespass to try title, and two reasons were assigned for denying a receiver: First, that the plaintiffs were in possession and defendant was guilty of no wrongful act; and, second, that mere inability to have the property developed constituted no ground for receivership. While we have grave doubts as to the soundness of these reasons for denying a receivership where oil under a tract in litigation is in imminent danger of being dissipated before final adjudication, we prefer to rest our holding in the present case upon grounds which distinguish it from that case. There the litigation was over the title to land which neither party had taken steps to develop for oil. Here the only controversy was between lessees of the mineral rights from the same lessors; the thing in controversy was the leasehold rights, and that controversy pertained to a joint interest in the property in litigation. If the two cases are one in principle, then we are clear in the view that the holding in Hermann v. Thomas is not sound, and we decline to follow it.

[7] The third contention is in a sense involved in the first and second. If it were true that the judgment of the trial court finally adjudicated the rights of the parties in the leasehold interests, vesting title either absolutely or as joint tenants with the oil company, then there would be no cause of action pending, other than the partitioning of those interests in kind; and, as we have said above, it is doubtful whether a receiver would be essential to protect the rights of the parties pending such partition.

The assertion, that the only purpose in seeking a receiver is to avoid the consequences of applicants' acts in developing the property in the event the judgment under which they claim is reversed, is but a conclusion. It is true that it is a fair deduction from the application that the lessee applicants were unwilling or unable, or both, to venture the amount of money which development would require without some protection against loss in the event the judgment was reversed.

But that fact alone does not constitute the basis for the receivership. It is only one of the elements entering into the entire situation depended upon as presenting a condition which renders it impractical to preserve the property to the true owners pending settlement of the controversy involved in the litigation. We will give this question further consideration later:

[8, 9] The fourth contention affects only the controversy from the viewpoint of the royalty holders, and even if it were conceded that the receivership would not be granted upon their application alone, it would not affect the right of the leasehold owners or claimants to a receiver. But we are not prepared to hold that the royalty owners are wholly without remedy merely because the leases they have executed do not, in terms, require immediate development. The provisions in these leases would not protect the lessees from the obligation of development when it appeared that the oil under the property was being drained off and would be largely or entirely dissipated before the litigation could be terminated. Whenever the question has been presented, it has been held by the several courts of civil appeals that leases of this character import an implied covenant that the lessee under proper circumstances will drill offset wells to prevent drainage to adjacent wells. This holding is supported by decisions in other jurisdictions, and is in accord with sound reasoning. The question does not seem to have reached the Supreme Court. For authorities upon the subject, see the recent case of Texas Co. v. Ramsower (Tex. Civ. App.) 255 S. W. 466. The rule invoked in these cases is analogous to that applied in the recent decision of the Supreme Court in Texas Co. v. Davis, 254 S. W. 304, wherein it was held that there was an implied obligation to continue exploration for the production of minerals after the wells had ceased to produce in paying quantities, a breach of which terminated the title to the minerals conveyed by the lease, as upon conditional limitation.

[10] That the royalty owners have no adequate remedy at law for the breach of such implied covenant is too well settled to require discussion.

[11] The power of the courts to appoint a receiver to convey or make title to the leasehold interests in the property is the most serious and difficult question which the case presents. It may be conceded, at the outset, that if the rights of the litigants can be reasonably protected in any other way, the power should be denied. In order to determine this question, it is essential that a clear view be had of the res in litigation and the relations of the several parties thereto and their rights and interests therein.

[12] It is now the settled law of this state that oil and gas in place not only constitute a part of the realty in which they repose, but are the subject of severance therefrom by grant. The leading case upon that subject is Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989. In that case, however, a distinction is drawn between that class of instruments which "express a present grant of the minerals in place," and those which merely grant a franchise or privilege to prospect with the right to appropriation when reduced to possession. This latter class of instruments was there held not to constitute such a conveyance of the minerals as would operate as a severance of the title thereto from the title to the fee, so as to render the minerals taxable apart from the fee. Under the former class of instruments it was held that the minerals were separately taxable. In the recent case of Stephens County v. Oil Co., 254 S. W. 290, the Supreme Court declined to follow the Daugherty Case in so far as it held that a lease giving the exclusive right to enter upon land for the purpose of drilling for and removing oil therefrom, such right to continue as long as oil or gas should be produced in paying quantities, passed only an incorporeal hereditament appurtenant to' the land; and held that such lease conveyed an interest in the realty subject to taxation separate from the fee. In declining to follow the Daugherty Case in this regard, the court adverted to the fact that in that case this particular character of instrument was not involved. We quote from Judge Greenwood's opinion:

"The court's determination [in the Daugherty Case] that the instruments before it had an altogether different legal effect makes it obvious that these expressions concerned matters not presented for decision. It was never intended that such argumentative expressions should be taken as authoritative."

Similar leases to those here involved were held in Robinson v. Jacobs (Tex. Sup.) 254 S. W. 309; Munsey v. Oil Co. (Tex. Sup.) 254 S. W. 311; and Texas Co. v. Davis (Tex. Sup.) 254 S. W. 304, to convey a fee upon limitation to the minerals.

[13] This severance of the title to minerals may also be made by reservation of title therein by the grantor in a deed to the fee. Elliott v. Nelson (Tex. Com. App.) 251 S. W. 501. And generally speaking the same rules apply to such title as to real estate; as for example the registration laws, protection of bona fide purchasers (Deaton v. Rush [Tex. Com. App.] 252 S. W. 1025), and the assignability of the possibility of reverter (Caruthers v. Leonard [Tex. Com. App.] 254 S. W. 779).

It will therefore be seen that the leasehold interests, the res involved in the litigation and sought to be protected by the receivership, constituted an interest in real estate as distinguished from a mere license or privilege, and was so treated by the trial court

in the decree in the main suit. The important question, therefore, is the power of the court, through a receivership, to dispose of the title to such property, if to do so is essential to its protection from loss or destruction pending the litigation.

[14, 15] Into whatever class this species of property may be held to fall, and by whatever rules its ownership and disposition may be governed, so long as it remains in place, its inherent properties and characteristics cannot be ignored by the courts. True as it is that oil and gas are universally held to be minerals, yet "they have peculiar attributes not common to other minerals because of their fugitive nature or vagrant habit— the disposition to wander or percolate, and the possibility of their escape from beneath one part of the surface of the earth to another." Texas Co. v. Daugherty, above. It would be an utter impossibility to trace them in their wanderings, and hence the law recognizes the title to them in the owner of the soil in which they are brought to the surface. While "the law is that the owner of the soil owned the oil beneath the surface as a part of the land and his title was made more definite when the oil was lifted to the surface" (Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559; Oil Co. v. Ry., 106 Tex. 103, 157 S. W. 708, 51 L. R. A. [N. S.] 268), still that ownership is qualified by the fugitive nature of the mineral, and title to it is lost to the owner of the soil whenever it passes from beneath his land by percolation or otherwise. No other rule would have practical application. Hence the owner of adjacent land cannot by injunction or otherwise prevent a landowner from draining through wells on his own land the oil which may in its original natural state be in place under the adjacent lands. Prairie Co. v. State (Tex. Com App.) 231 S. W. 1088.

[16, 17] In citing this case we are not unmindful of the statement in Stephens County v. Oil Co., above, that the quotation with approval in the Prairie Co. Case of the statement in Gould on Waters, that oil, like water, is not the subject of property until reduced to actual possession, is not authority, "because the Supreme Court adopted only the judgment recommended by the Commission," citing in that connection McKenzie v. Withers, 109 Tex. 256, 206 S. W. 503. It is interesting to note in this connection that the same quotation from Gould on Waters is cited with apparent approval in the Daugherty Case, 107 Tex., at page 237, 176 S. W. 717, L. R. A. 1917F, 989. We do not think it was intended in the Prairie Co. Case to hold or intimate that title to oil or gas in place could not be conveyed as any other real property. Such holding would be in direct conflict with the Daugherty Case, which was cited in the Prairie Co. Case. But even if so intended, such holding would not be author-

ity for the very cogent reason that it was not necessary to the decision, and was therefore obiter dicta, a reason thought valid by the Supreme Court in Stephens County v. Oil Co., above, for declining to follow the Daugherty Case as regards the legal effect of instruments not before the court in that case. A careful reading of the Prairie Co. Case we think will demonstrate that its holding that injunction will not lie to restrain an adjacent landowner from draining, through wells on his own land, the oil under the adjacent lands of the relator, was absolutely essential to the judgment recommended by the Commission in that case, and the Supreme Court must necessarily have approved that holding in adopting the judgment recommended, regardless of whether the opinion was adopted so as to entitle it to be published in the Supreme Court Reports. We do not believe the Supreme Court intended in the above quotation to hold that no conclusion expressed by the Commission, however essential to the judgment recommended, is authority merely because the Supreme Court only adopted the judgment. Such holding would render the opinions of the Commission of such doubtful value as to hardly warrant their publication in the Southwestern Reporter. We prefer to think, as expressed by the Supreme Court upon rehearing (255 S. W. 601) in Texas Co. v. Davis, decided the same day as the Stephens County Case, that their "conclusion is not accurately expressed in the quoted portion of the opinion, which was prepared under the stress of the closing days of last term." Until further light is shed upon this subject by the Supreme Court, we think the holdings of the Commission which are essential to the judgments adopted are entitled to be regarded as having the express sanction of the Supreme Court, and therefore to be followed as authority. This particular holding of the Prairie Co. Case is also authority as being in accord with the weight of decisions.

[18] Since one· landowner cannot enjoin the draining of his land of oil and gas, there is no known method of transforming the qualified or limited ownership in the oil and gas in place, to that absolute ownership which would make it of any practical value except by drawing it to the surface and reducing it to actual, physical possession. Could this be accomplished, under the situation of the parties, except through a receiver with power to make contracts for exploration upon consideration of a substantial part of the oil and gas produced? We think this question must be answered in the negative.

We know that the mining of oil and gas is accomplished only by drilling in the earth, and that this entails a great deal of expense. We also know that even in proven territory the results of such drilling are uncertain; and that the business is therefore precarious

and hazardous, and is only undertaken through long-time leasehold contracts, which give to the lessees a large interest in the oil produced, usually ⅞, and to the owner usually only a royalty of ⅛, except where the prospects are considered sufficiently encouraging to warrant payment of a lump sum in addition, called a "bonus," which in some instances is quite large. It could hardly be expected that any one with ordinary business judgment would hazard the large outlay required to prospect for oil, if the title to the land upon which the prospecting is to be done is in litigation, the final result of which is doubtful, unless he had some assurance of protection regardless of the outcome of the suit. It is true the oil company was placing no physical impediment ·to such development by the other leaseholders, and that they had the unrestrained right, so far as the physical facts were concerned, to engage in such development. But to do so would be at their peril; they would in law be only trespassers if the oil company's contentions in the main suit were upheld, and would lose everything they had put into the venture. Bender v. Brooks and Oil Co. v. Ry., above. The financial hazard of the undertaking, created by the condition of the title to the res, offered as effectual a barrier from every practical viewpoint, as if physical development were opposed by physical force. We cannot but conclude that a receivership with the powers designated in the order afforded the only practical means of preserving the res pending the litigation.

This being true, it would seem to follow that the order appointing the receiver should be upheld. Ordinarily, it would not be permissible to divest title to real estate in litigation through a receivership; foreclosures, and perhaps other proceedings, furnishing exceptions to this rule. But the real estate, or interest in real estate, here involved "has peculiar attributes" not common to other property so classed. As real estate it is probably sui generis as regards these attributes, and partakes of the nature of perishable personalty. Where these peculiar attributes are involved, that law should be applied which the nature of such attributes in sound reason renders applicable.

Authority for the sale of perishable personal property in litigation, by means of a receivership, is abundant. So also in the case of real property receivers are appointed to protect it from damage or injury, when no other adequate remedy is available.

While the cases are not numerous, due, no doubt, to the fact that the mineral oil industry in its present highly developed state is of recent origin, and to the further fact that receiverships in such cases are usually sought or acquiesced in by all parties concerned, still authority is not wanting for the appointment of receivers with power to develop through lease contracts. Oklahoma v. Texas, 253 U. S. 465, 40 Sup. Ct. 580, 64 L. Ed. 1015, 1017; Huston v. Cox, 103 Kan. 73, 172 Pac. 992; Oil Co. v. Swift (Okl. Sup.) 170 Pac. 238; Oil Co. v. U. S., 245 Fed. 521, 157 C. C. A. 633; Oil Co. v. Burdett, 72 W. Va. 803, 79 S. E. 667, Ann. Cas. 1915D, 1033; Tardy's Smith on Receivers, §§ 516–521. See, also, case note in Ann. Cas. 1915D, p. 1034 et seq. In some of the cases the oil interests are treated as mere incorporeal hereditaments, and in none of them does the question of the power of the court to dispose of real estate appear to have been discussed. So far as legal literature is concerned this question appears to present a practically untrodden field. It may be noted in this connection that these receiverships are generally upheld upon the theory of necessity to prevent waste.

Most nearly analogous to the present case is that of Oil Co. v. Burdett, above, decided by the Supreme Court of West Virginia (the court of final resort in that state), in 1913, just ten years after the decision by the same court in Freer v. Davis, above. The following extended quotation from the opinion will suffice to show its present application:

"The application for the writ raised only a question of jurisdiction in the circuit court, and did not call in question the propriety of the decree or order complained of on any ground other than ·the alleged want of jurisdiction, or power, to appoint a receiver to produce oil and gas from land held in cotenancy, without the consent of all parties interested therein. Under ordinary circumstances, there would be no such power, but the bill filed in the cause in which the receiver was appointed shows an extraordinary and unusual situation. The small tract of land, as to which partition was sought, probably contained very large and valuable quantities of oil and gas, as disclosed by operations on adjacent lands, and the wells on the adjacent land were so close and numerous that extensive drainage of the tract would have been the inevitable and direct consequence of the operation of such wells. The only remedy for this situation, as a means of preventing certain and great loss, was the drilling and operation of wells on the tract itself by way of offset to wells on the adjacent land. As the relator had wells of its own on adjacent property, through which it was draining oil from the tract probably largely in excess of its interest therein as cotenant and lessee, development of the tract was against its interest, and, holding interests in the tract, it was in a position to prevent development thereof by refusal to join in any manner with its cotenants, the other lessees in the work of development. What the circuit court did, therefore, by the appointment of a receiver was not to give one person rights in the lands of another, without his consent, but merely to preserve to the owners of the property that which belonged to them. It was a case of loss, without the intervention of the court by its preventive process. It was one of preservation of that which otherwise would have been destroyed. Finding no direct precedent for the action of the court below, this court was of the opinion that its action accords

with general legal principles and the analogies of the law, recognizing and admitting drastic and summary remedies for the preservation of property, likely to be lost by any means and under any circumstances. Perishable goods are sold by their custodians, and their value preserved by conversion thereof into money when necessary to prevent loss. Property may be sold and converted into money by court action, pending litigation, when the expense of keeping it is so greatly disproportionate to its value that loss may result."

The only difference between that case and the case at bar lies in the fact that there some of the individual interests were so small that the property could not be partitioned in kind, and the defendant there was interested in wells on other lands which were draining the land in suit of its oil. Neither of these circumstances seems to us sufficient to distinguish the two cases in principle. That the property could not be divided in kind would afford no legal obstacle to its development by any of the joint owners, and that the defendant was interested in other wells draining the property was only material as showing a motive for his refusal to join in the application for receivership. It could have no bearing upon the effect upon the property of wells actually draining it of oil. The same result would follow, regardless of the ownership of such wells. The decision in that case seems to us to be sound, and one worthy to be followed.

The situation here seems to us equally strong, as calling for the application of the equitable intervention of the court, as that of any of the cited cases. Here the property involved is the mineral rights in land in a proven oil field which is already in a high state of development and production. The title to the minerals has already been severed from that of the fee by the acts of the parties to the litigation by lease contracts into which the law imports the obligation of the lessees to drill offset wells. No question is raised as to the imperative necessity of such offset wells as the only protection to the property. The respective claimants are unable to compose their differences. They have the legal right to have their claims passed upon by the courts and are pursuing that course with all diligence, under the procedure which the law provides. Negotiations for protecting the property in the meantime have reached an impasse, for which no one can be held legally responsible. The property can be saved only by development, the cost of which is too great to warrant its undertaking, with the hazard which the litigation creates unremoved. If development is delayed until the litigation is terminated, the property interests of all concerned will be lost or greatly diminished. To deny a receivership under such circumstances would be to deny the only remedy which would afford any degree of protection to the parties for their loss. A statement of the case brings it squarely within the principles which have been uniformly recognized as authorizing a receiver in regard to other classes of property similarly circumstanced. We think the order of the trial court should be affirmed.

[19] A further objection is made to the order appointing the receiver, in that it imposes a potential liability for costs of the receivership upon the defendant oil company. We agree with the oil company's contention that no personal liability for such costs can be legally taxed against it. We hardly think the order is susceptible of this construction; but, in order to free the matter of all possible doubt, we direct that the trial court so modify the order as to impose no personal obligation for costs of the receivership upon the oil company.

With this modification, the order of the trial court appointing a receiver with the powers therein designated is affirmed.

Affirmed.